**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| MARGARET HAYNE KINNETT, *Individually And Behalf Of All Others Similarly Situated*,<br><br>                     Plaintiff,<br><br>                     vs.<br><br>STRAYER EDUCATION, INC., ROBERT S. SILBERMAN, MARK C. BROWN, and KARL MCDONNELL,<br><br>                     Defendants. | **CASE NO.: 8:10-CV-2317T23MAP** |
| LOUIS LEKUS, *Individually And Behalf Of All Others Similarly Situated*,<br><br>                     Plaintiff,<br><br>                     vs.<br><br>STRAYER EDUCATION, INC., ROBERT S. SILBERMAN, MARK C. BROWN, and KARL MCDONNELL,<br><br>                     Defendants. | **CASE NO.: 8:10-cv-2728-T26AEP** |

**MEMORANDUM OF LAW IN SUPPORT OF OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION OF RELATED CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

36226v2

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED ....................................... 3

    1. The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff ................................ 3

II. THE COURT SHOULD APPOINT OKLAHOMA AS LEAD PLAINTIFF ................... 4

    A. The Procedure Required By The PSLRA ................................................................. 4

        1. Oklahoma Is Willing To Serve As Class Representative ........................... 5

        2. Oklahoma Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class .............................................. 5

        3. Oklahoma Satisfies The Requirements Of Rule 23(a) Of The Federal Rules Of Civil Procedure ............................................................... 9

III. OKLAHOMA'S SELECTION OF COUNSEL SHOULD BE APPROVED .................. 10

CONCLUSION ...................................................................................................................... 11

## TABLE OF AUTHORITIES

### CASES

*Appleyard v. Wallace*,
 754 F.2d 955 (11th Cir. 1985) ....................................................................................9

*In re Baan Co. Sec. Litig.*,
 186 F.R.D. 214 (D.D.C. 1999)....................................................................................7

*Burke v. Ruttenberg*,
 102 F. Supp. 2d 1280 (N.D. Ala. 2000)......................................................................7

*In re Cendant Corp. Sec. Litig.*,
 264 F.3d 201 (3d Cir. 2001), *aff'd*, 404 F.3d 173 (2005)...........................................7

*In re Drexel Burnham Lambert Grp., Inc.*,
 960 F.2d 285 (2d Cir. 1992)........................................................................................9

*Ehlert v. Singer*,
 185 F.R.D. 674 (M.D. Fla. 1999)................................................................................9

*In re Faro Techs. Sec. Litig.*, No. 6:05-cv-1810-Orl-22DAB,
 WL 1119201 (M.D. Fla. Apr. 26, 2006)..............................................................6, 10

*Fischler v. Amsouth Bancorp.*,
 No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997).........................9

*Gluck v. CellStar Corp.*,
 976 F. Supp. 542 (N.D. Tex. 1997) .......................................................................7, 8

*Greebel v. FTP Software, Inc.*,
 939 F. Supp. 57 (D. Mass. 1996) ................................................................................7

*Piven v. Sykes Enters.*,
 137 F. Supp. 2d 1295 (M.D. Fla. 2000)......................................................................9

*Plumbers & Pipefitters Local 51 Pension Fund v. Darden Rests., Inc.*,
 No. 6:08-cv-388-Orl-19DAB, 2008 WL 2608111 (M.D. Fla. July 1, 2008)............6, 9

*Ravens v. Iftikar*,
 174 F.R.D. 651 (N.D. Cal. 1997)................................................................................7

*In re Razorfish, Inc. Sec. Litig.*,
 143 F. Supp. 2d 304 (S.D.N.Y. 2001)........................................................................8

*Schulman v. Lumenis, Ltd.*,
  No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003)....................7

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*,
  No. 07-81038-Civ, 2008 WL 1943955 (S.D. Fla. May 2, 2008)..................6

*Vincelli v. Nat'l Home Health Care Corp.*,
  112 F. Supp. 2d 1309 (M.D. Fla. 2000)..................3, 9

**DOCKETED CASES**

*In re Cigna Corp. Sec. Litig.*,
  No. 2:02CV8088 (E.D. Pa. 2007) ..................11

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00-CV-9475 (SHS) (S.D.N.Y. 2005)..................11

*In re Initial Public Offering Securities Litig.*,
  No. 21 MC 92 (SS) (S.D.N.Y. 2009) ..................11

*In re Marsh & McLennan Cos. Sec. Litig.*,
  No. 04-CV-8144 (CM) (S.D.N.Y. 2009)..................10

*In re Royal Dutch/Shell Transport Sec. Litig.*,
  No. 04-374 (JAP) (D.N.J. 2008)..................10

**STATUTES & OTHER AUTHORITIES**

Fed. R. Civ. P. 42(a) ..................1, 3

15 U.S.C. §78u-4(a)(1) ..................4

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)..................4

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................4, 5

15 U.S.C. §§78u-4(a)(3)(A)(i)(II)..................4, 5

15 U.S.C. §78u-4(a)(3)(A)(i)..................4

15 U.S.C. § 78u-4(a)(3)(B)..................4

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..................3

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)..................4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................10

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) ......................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa) ..............................................................................10

15 U.S.C. §78u-4(a)(3)(B)(v) .......................................................................................9, 10

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730 .....................6

S. Rep. No. 104-98 (1995) ..................................................................................................8

Elliott J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053 (1995) ...............................................................................................8

## PRELIMINARY STATEMENT

Presently pending before the Court are two class action lawsuits (the "Actions") brought on behalf of all persons or entities (the "Class") who purchased the common stock of Strayer Education, Inc. ("Strayer" or the "Company") during the period November 1, 2007 through and including October 13, 2010 (the "Class Period"). Plaintiffs allege violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, against Defendants Strayer, Robert S. Silberman, Mark C. Brown, and Karl McDonnell (the "Individual Defendants").

Class member Oklahoma Firefighters Pension and Retirement System ("Oklahoma") hereby moves this Court, pursuant to Fed. R. Civ. P. 42(a) and Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order:  (a) consolidating the related actions; (b) appointing Oklahoma as lead plaintiff in the Actions; and (c) approving Oklahoma's selection of Bernstein Liebhard LLP ("Bernstein Liebhard") as lead counsel and Barker Rodems & Cook ("Barker Rodems") as liaison counsel for the Class.

During the Class Period, Oklahoma incurred losses of $1,241,186.  Oklahoma believes its losses represent the largest financial interest in the outcome of the litigation.

## STATEMENT OF FACTS

Plaintiffs allege that throughout the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. Specifically, defendants failed to disclose that: (i) the Company had engaged in improper and deceptive recruiting and financial aid lending practices and, due to the government's scrutiny into the for-profit education sector, the Company would be unable to continue these practices in the future;

36226v1

(ii) the Company failed to maintain proper internal controls; (iii) many of the Company's programs were in jeopardy of losing their eligibility for federal financial aid; and (iv) as a result of the foregoing, defendants' statements regarding the Company's financial performance and expected earnings were false and misleading and lacked a reasonable basis when made.

Significantly, the U.S. Department of Education proposed new regulations for programs, such as those run by Strayer, to continue to be eligible to receive federal financial aid. The tests for eligibility would be based on repayment rates and debt-to-income loads. Under the proposed "gainful employment" regulations, programs would need to have a repayment rate of at least 45% to continue to be eligible for federal financial aid. The regulations, if adopted, will go into effect in July 2011.

On August 13, 2010, after the market closed, the U.S. Department of Education released data on federal student-loan repayment rates at the nation's colleges and universities. The data showed that repayment rates were 54% at public colleges and 56% at private non-profit institutions, compared to just 36% at for-profit colleges. Specifically, the data showed that the repayment rates at Strayer were just 25%. On this news, the price of Strayer stock dropped 18.37%, or $36.75 per share, from a closing price of $200.01 per share on August 13, 2010 to a closing price of $163.26 per share on August 16, 2010, the following trading day, on a 482% increase in trading volume.

On October 14, 2010, Strayer stock fell another 13% after another for-profit education company, The Apollo Group, announced a big drop in its enrollment numbers after the market closed on October 13, 2010. The stock of Strayer, together with that of Apollo and many other for-profit education companies, fell on October 14, 2010 because the market perceived that a

similar drop in enrollment was in Strayer's future. On October 28, 2010, the other shoe dropped and Strayer announced lower enrollment figures.

## ARGUMENT

### I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact. *See Vincelli v. Nat'l Home Health Care Corp.*, 112 F. Supp. 2d 1309, 1313 (M.D. Fla. 2000). "In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced." *Id.* (citation omitted).

The Actions pending before this Court present similar factual and legal issues, as they all involve the same subject matter, and present the same legal issues. Each alleges the same violations of the Exchange Act, and is based on the same wrongful course of conduct. Each names the Company and the Individual Defendants as Defendants. Because the Actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all related actions.

Accordingly, consolidation under Rule 42(a) is appropriate.

#### 1.   The Court Should Resolve The Consolidation Issue As A Prerequisite To The Determination Of Lead Plaintiff

Once the Court decides the consolidation motion, it must decide the lead plaintiff issue "[a]s soon as practicable." Section 21D(a)(3)(B)(ii), 15 U.S.C. § 78u-4(a)(3)(B)(ii). As Oklahoma has an interest in moving these actions forward, it respectfully urges the Court to resolve the consolidation motion as soon as practicable. A prompt determination is reasonable and warranted under Rule 42(a), especially given the common questions of fact and law presented by the related actions now pending in this District.

## II.     THE COURT SHOULD APPOINT OKLAHOMA AS LEAD PLAINTIFF

### A.     The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and (a)(3)(B), 15 U.S.C. §78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(B)(ii), 15 U.S.C. §78u-4(a)(3)(A)(i). The PSLRA requires the court to consider within 90 days all motions filed within 60 days after publication of that notice made by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. Section 21D(a)(3)(A)(i)(II) and 21D(a)(3)(B)(i), 15 U.S.C. §§78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person" that:

> (aa)    has either filed the complaint or made a motion in response to a notice;
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render

such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Oklahoma satisfies the foregoing criteria and it is not aware of any unique defenses that Defendants could raise against it. Therefore, Oklahoma is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

### 1. Oklahoma Is Willing To Serve As Class Representative

On October 15, 2010, counsel caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against, among others, Strayer, and which advised putative class members that they had until December 14, 2010 to file a motion to seek appointment as a lead plaintiff in the Actions. *See* Barker Decl. Ex. A. Oklahoma has reviewed one of the complaints filed in the Actions and has timely filed its motion pursuant to the Notice. In doing so, Oklahoma has attached its certification attesting to its willingness to serve as representative of the Class and provide testimony at deposition and trial, if necessary. *See* Barker Decl. Ex. B. Accordingly, Oklahoma satisfies the first requirement to serve as lead plaintiff for the Class. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

### 2. Oklahoma Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as Oklahoma, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."
>
> * * *
>
> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

Courts in this Circuit, as well as around the country, have noted a Congressional preference to appoint institutional investors. *See*, *e.g.*, *Plumbers & Pipefitters Local 51 Pension Fund v. Darden Rests., Inc.,* No. 6:08-cv-388-Orl-19DAB, 2008 WL 2608111, at *1 (M.D. Fla. July 1, 2008) (appointing Carpenters Pension Trust Fund for Northern California and Carpenters Annuity Trust Fund for Northern California as lead plaintiffs and Bernstein Liebhard LLP as lead counsel, and noting that the PSLRA intended "to increase the likelihood that institutional investors – parties more likely to balance the interests of the class with the long-term interests of the company – would serve as lead plaintiffs"); *Sheet Metal Workers Local 28 Pension Fund v. Office Depot*, *Inc.*, No. 07-81038-Civ, 2008 WL 1943955, at *2 (S.D. Fla. May 2, 2008) (in passing the PSLRA, Congress intended "that large institutional investors should be encouraged to serve as class representatives in securities fraud class actions") (citation omitted); *In re Faro Techs. Sec. Litig.*, No. 6:05-cv-1810-Orl-22DAB, 2006 WL 1119201, at *3 (M.D. Fla. Apr. 26,

2006) (favoring proposed institutional investor lead plaintiff); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331 (N.D. Ala. 2000) (noting aim of PSLRA was to encourage institutional investors to control securities class actions); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors"); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2 (S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is "to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel'") (citation omitted). "Congress believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs." *Id. See also In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 244 (3d Cir. 2001), *aff'd*, 404 F.3d 173 (2005) (Congress "anticipated and intended that [institutional investors] would serve as lead plaintiffs.")

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions would ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation"). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and

are best able to negotiate with and oversee counsel. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98, at 10 (1995). In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliott J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss & Beckerman provided "the basis for the 'most adequate plaintiff' provision").

Oklahoma is ideally suited for the role as lead plaintiff. Oklahoma lost $1,241,186 in Strayer common stock during the Class Period. *See* Barker Decl. Ex. C. As a large institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, Oklahoma will be able to actively represent the class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549 (citation omitted).

### 3. Oklahoma Satisfies The Requirements Of Rule 23(a) Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Typicality and adequacy of representation (Rules 23(a)(3) & (a)(4)) are the only provisions relevant to a determination of lead plaintiff under the PSLRA. *See Plumbers & Pipefitters,* 2008 WL 2608111, at *2; *Vincelli*, 112 F. Supp. 2d at 1314 (M.D. Fla. 2000); *Ehlert v. Singer*, 185 F.R.D. 674, 677-78 (M.D. Fla. 1999); *Piven v. Sykes Enters.*, 137 F. Supp. 2d 1295, 1302 (M.D. Fla. 2000); *Fischler v. Amsouth Bancorp.*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997).

The claims asserted by Oklahoma are typical of those of the Class. Oklahoma, like the members of the Class, purchased Strayer common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, its claims are typical, if not identical, to those of the other members of the Class because Oklahoma suffered losses similar to those of other class members and its losses result from Defendants' common course of conduct. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Accordingly, Oklahoma satisfies the typicality requirement of Rule 23(a)(3).

Oklahoma is an adequate representative for the Class because there is no antagonism between its interests and those of the Class. *See Plumbers & Pipefitters,* 2008 WL 2608111, at *2 n.2. Moreover, Oklahoma has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to Section 21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v).

Accordingly, at this stage of the proceedings, Oklahoma has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies Section 21D(a)(3)(B)(iii)(I)(cc), 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

### III.   OKLAHOMA'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  Section 21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). *See also Faro Techs.*, 2006 WL 1119201, at *2 ("Absent any indication that this choice [of counsel] is not in the best interests of the Class, the case law indicates that such a choice should be respected.")

Bernstein Liebhard has extensive experience in successfully prosecuting securities fraud and shareholder actions.  Bernstein Liebhard has frequently been appointed as lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country.  *See* Bernstein Liebhard's firm resume, attached as Ex. 4 to the Barker Declaration.  Indeed, THE NATIONAL LAW JOURNAL has recognized Bernstein Liebhard for eight consecutive years as one of the top plaintiffs' firms in the country.  Bernstein Liebhard has also been listed in THE LEGAL 500, a guide to the best commercial law firms in the United States, for the past three years.

Four of Bernstein Liebhard's recent outstanding successes include:

- *In re Marsh & McLennan Companies, Inc. Securities Litigation*, No. 04-CV-8144 (CM) (S.D.N.Y. 2009) (settlement: $400 million);

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (Judge Joel A. Pisano gave final approval to a U.S. settlement with a minimum cash value of $130 million.  This settlement is in addition to a $350 million European settlement on behalf of a class of non-U.S. purchasers of Shell securities on non-U.S.

exchanges, which the court-appointed lead plaintiffs and Bernstein Liebhard were, in the words of Judge Pisano, a "substantial factor" in bringing about);

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-CV-9475 (SHS) (S.D.N.Y. 2005) (settlement: $120 million, representing 188% of the recognized losses); and

- *In re Cigna Corp. Securities Litigation,* No. 2:02CV8088 (E.D. Pa. 2007) (settlement: $93 million).

Further, Bernstein Liebhard partner Stanley Bernstein serves as Chairman of the Executive Committee in *In re Initial Public Offering Securities Litigation* ("IPO"), No. 21 MC 92 (SS) (S.D.N.Y. 2009), pending before Judge Shira Scheindlin. The IPO litigation is one of the most complex securities class actions ever prosecuted, coordinating 309 separate securities class actions in one proceeding. On October 5, 2009, the Court granted final approval to a $586 million settlement.

Oklahoma has also selected and retained Barker Rodems as proposed liaison counsel for the Class. Barker Rodems also has extensive experience prosecuting complex securities class actions, such as this one, and is well qualified to represent the Class as liaison counsel. *See* Barker Decl. Ex. E.

## **CONCLUSION**

For the foregoing reasons, Oklahoma respectfully requests that this Court: (1) consolidate the related, and any subsequently-filed, actions; (2) appoint Oklahoma as lead plaintiff in the captioned, and all subsequently-filed, related actions; and (3) approve Oklahoma's

selection of Bernstein Liebhard as lead counsel and Barker Rodems as liaison counsel to represent Plaintiffs and the Class.

Dated: December 14, 2010

**BARKER RODEMS & COOK, P.A.**

/s/  Chris A. Barker
_____
Chris A.Barker
Fla. Bar No.  885568
cbarker@barkerrodemsandcook.com
400 North Ashley Drive, Ste. 2100
Tampa, FL  33602
Telephone: (813) 489-1001
Facsimile:  (813) 489-1008

**Liaison Counsel for Oklahoma and Proposed Liaison Counsel for Plaintiffs and the Class**

**BERNSTEIN LIEBHARD LLP**
Stanley D. Bernstein
Sandy A. Liebhard
Joseph R. Seidman, Jr.
10 East 40th Street, 22nd Floor
New York, NY 10016
Telephone: (212) 779-1414
Facsimile:  (212) 779-3218

**Counsel for Oklahoma and Proposed Lead Counsel for Plaintiffs and the Class**

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed within the CM/ECF system on December 14, 2010, and was thereby served upon all parties and counsel registered therein.

/s/ Chris A. Barker
_____
CHRIS A. BARKER