UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| MARGARET JAYNE KINNETT, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 8:10-cv-02317-SDM-MAP <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| STRAYER EDUCATION, INC., ROBERT S. SILBERMAN, MARK C. BROWN, and KARL MCDONNELL, | ) ) ) ) | |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| LOUIS LEKUS, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No. 8:10-cv-02728-SDM-AEP <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| STRAYER EDUCATION, INC., ROBERT S. SILBERMAN, MARK C. BROWN, and KARL MCDONNELL, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO OKLAHOMA FIREFIGHTERS
PENSION AND RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS
<u>LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

Proposed lead plaintiff Alaska Electrical Pension Fund ("Alaska Electrical") respectfully submits this memorandum of law in opposition to Oklahoma Firefighters Pension and Retirement System's ("Oklahoma Firefighters") motion for appointment as lead plaintiff filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    INTRODUCTION

Two movants seek appointment as lead plaintiff: Oklahoma Firefighters and Alaska Electrical. The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the movant "who has the greatest financial stake in the outcome of the case, ***so long as*** he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *see also* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).[2] While Oklahoma Firefighters claims a larger loss, it has not made the requisite threshold showing of adequacy. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Specifically, Oklahoma Firefighters has not demonstrated that its proposed lead counsel for the class, Bernstein Liebhard LLP ("Bernstein Liebhard"), is adequate. *See infra* §II.A. By contrast, Alaska Electrical, also an institutional investor that suffered a significant loss, has demonstrated its adequacy and that of its counsel, Robbins Geller Rudman & Dowd, LLP ("Robbins Geller"). As such, Oklahoma Firefighters' motion should be denied in favor of the motion of Alaska Electrical.[3]

---

[1]     The parties agree that consolidation of the related actions pending in this District is appropriate.

[2]     All emphasis is added and all citations are omitted unless otherwise noted.

[3]     Pursuant to Local Rule 3.01(b), opposition briefs are due "fourteen (14) days after service of the motion." The motions were served on December 14, 2010. Including three

"If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must . . . consider[] the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730. Here, that plaintiff is Alaska Electrical.

## II.    ARGUMENT

"The Court, in appointing a Lead Plaintiff, acts as the gatekeeper for absent class members." *Smajlaj v. Brocade Communs. Sys.*, 2006 U.S. Dist. LEXIS 97618, at *10 (N.D. Cal. Jan. 12, 2006). "In that role, the Court must ensure that this action will be litigated as effectively and efficiently as possible, and that there will be as few procedural or tangential impediments as possible." *Id.*

In this regard, the PSLRA requires district courts to confirm that a movant "satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). And in "assessing whether the movant satisfies Rule 23's adequacy requirement, courts should consider" whether the movant "has obtained adequate counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (noting that "one of a lead plaintiff's most important functions is to 'select and retain' lead counsel"). Indeed, to "ensure that [a movant] will fairly and adequately represent the interests of the class," the Court should "inquire whether the movant has demonstrated a willingness and ability to select competent class counsel." *Id.*

---

additional days for service pursuant to Fed. R. Civ. P. 6(d), the oppositions were due on December 31, 2010, which is a Court holiday. Thus, pursuant to Fed. R. Civ. P. 6(a), the oppositions are due on January 3, 2011. Oklahoma Firefighters filed its opposition brief early, on December 28, 2010 with a corrected brief filed on December 31, 2010.

Here, Oklahoma Firefighters has prevented the Court from making this threshold adequacy determination by failing to make a *prima facie* showing that its counsel, Bernstein Liebhard, can adequately serve as a fiduciary for the class in the role of lead counsel in this action.

**A.    Oklahoma Has Not Triggered the "Most Adequate Plaintiff" Presumption**

A movant with the largest financial interest in the relief sought by the class is not entitled to the PSLRA's "most adequate plaintiff" presumption unless it first makes a threshold showing of adequacy. *Cendant*, 264 F.3d at 263-65. This important tenet of PSLRA jurisprudence – that "largest loss" alone is not dispositive – can come as no surprise to Oklahoma Firefighters. *See Mizzaro v. Home Depot, Inc.*, No. 06-cv-1151-ODE, slip op. at 4 (N.D. Ga. Sept. 26, 2006) (recognizing that, while Oklahoma Firefighters "sustained the largest loss," Oklahoma Firefighters was not "the most capable and adequate representative of the interests of the class").[4]

In assessing whether a movant has made a preliminary showing of adequacy, the "presumptive lead plaintiff's choice of counsel" "may be relevant" to the lead plaintiff determination. *Cavanaugh*, 306 F.3d at 732. Indeed, because a lead plaintiff's selection of counsel is "subject to the approval of the court" (15 U.S.C. §78u-4(a)(3)(B)(v)), it is incumbent upon Oklahoma Firefighters to demonstrate that its choice of counsel here does not "cast genuine and serious doubt on that plaintiff's willingness or ability to perform the

---

[4]    A copy of this slip opinion is attached as Exhibit A to the Declaration of Douglas Wilens ("Wilens Decl."), which is filed contemporaneously with this brief.

functions of lead plaintiff." *Id.* at 733; *see also* Fed. R. Civ. P. 23(g) (noting that when appointing class counsel, court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class"); *McIlvaine v. Arthrocare Corp.*, No. 08-80343-KLR, slip op. at 4-5 (S.D. Fla. July 16, 2008) (noting that "[i]n the context of a motion to appoint lead plaintiff and counsel in a securities fraud action, however, it appears that courts must make an independent determination of whether a particular [movant] is the best . . . to represent a proposed class") (Wilens Decl., Exh. B).

Oklahoma Firefighters' choice of lead counsel here is the New York law firm Bernstein Liebhard. *See* Dkt. No. 16 at 10. Importantly, while Bernstein Liebhard attached a firm résumé to the motion, the firm neglected to inform the Court of recent, highly publicized (especially in the Tampa-St. Petersburg area) issues relating to its efforts to serve as securities counsel to the Florida State Board of Administration ("FSBA"). *See* Wilens Decl., Exh. C (February 4, 2010 letter to FSBA). Indeed, as first reported in the *St. Petersburg Times* and then picked up by national media, Bernstein Liebhard was forced to withdraw publicly from consideration as securities counsel to the FSBA after "an anonymous letter arrived at [Attorney General Bill] McCollum's office" that accused "the law firm's principals of failing to disclose personal tax problems and other wrongs." *See* Wilens Decl., Exh. D (March 4, 2010 *St. Petersburg Times* article); *see also* Wilens Decl., Exh. E (January 5, 2010 *American Lawyer.com* article). The circumstances leading up to Bernstein Liebhard's publicized withdrawal of its bid to serve as counsel to the FSBA raises concerns about the firm's candor in seeking to represent Oklahoma Firefighters (and the class) here, as

well as concerns about Oklahoma Firefighters' vetting and due diligence in selecting counsel.

In seeking to represent the FSBA in securities litigation like this, Bernstein Liebhard failed to disclose a 2008 investigation by the Manhattan District Attorney's office for tax fraud against all three named partners (including current named partners Stanley Bernstein and Sandy Liebhard) and the firm itself. *See* Wilens Decl., Exh. D.[5]  Indeed, these facts were brought to the FSBA's attention by an anonymous letter rather than by Bernstein Liebhard. *Id.*  Even when named partner Stanley Bernstein attended a supplemental interview to address the claims made in the anonymous letter, Mr. Bernstein repeatedly said that "he was never investigated for personal tax problems" and "insisted that a former partner's tax offense in 2008 was unrelated to anyone else at the firm."  *See id.*; *see also* Wilens Decl., Exh. G (*In re Bernstein Liebhard Follow-Up Interview*, transcript at 8) (when asked whether "there [were] no document requests for your personal tax records" Mr. Bernstein unequivocally responded "Correct.").[6]  These statements, however, were false.  In "a letter to the SBA two weeks later, Bernstein said he had 'failed to recall' that the New York District

---

[5]      Bernstein Liebhard was formerly known as Bernstein Liebhard & Lifshitz.  In 2008, the third named partner, Menachem ("Mel") Lifshitz, pled guilty to tax fraud and paid a $5 million fine.  *See* Wilens Decl., Exh. F (anonymous letter).

[6]      This statement was of particular importance to at least one member of the FSBA Evaluation Team.  *See id.* at 49 ("[W]hat made a substantial impression on me today was your unwavering statement about the fact that the Manhattan District Attorney's Office did not look in any way at your personal tax records or any documents associated with that other than in the context of the audit because it seems that that's a key fact in connection with the allegations in this letter.  I would like to note that.").  Mr. Bernstein's February 4, 2010 letter clarified and corrected that "unwavering" statement.  *See* Wilens Decl., Exh. C.

Attorney's Office had asked for his personal tax returns and that they had been 'turned over to tax authorities for civil restitution.'"  Wilens Decl., Exh. C.  It is troubling that Bernstein Liebhard was reluctant to acknowledge candidly the facts and scope of this investigation even after the FSBA afforded the firm an opportunity to address the assertions levied in the anonymous letter.  *See id.* (noting that firm was withdrawing application not as a result of its repeated failure to candidly answer the FSBA's questions but rather because of "the burden that this entire unfortunate sequence of events has imposed on the SBA").[7]

The risk of harm to the class if Oklahoma Firefighters was not fully apprised of these events is real.  *See generally* FLORIDA RULES OF PROF'L CONDUCT, Rule 4-1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.").  For example, after Mel Lifshitz pled guilty to tax fraud, Bernstein Liebhard withdrew as counsel to the State Treasurer of Michigan, Custodian of the Michigan Public School Employees' Retirement System, State Employees' Retirement System, Michigan State Police Retirement System and Michigan Judges Retirement System in the *American International Group* securities litigation while their lead plaintiff motion was pending.  *See* Wilens Decl., Exh. H (March 9, 2009 Notice of

---

[7]     At the January 14, 2010 interview, the FSBA requested that Bernstein Liebhard formally respond in writing to additional questions.  *See* Wilens Decl., Exh. G at 54.  It is not clear from Mr. Bernstein's February 4, 2010 letter whether the firm ever did so before withdrawing its application to serve as the FSBA's securities counsel.

Withdrawal).[8] While the reasons for that sudden withdrawal were not publicly disclosed, if

Oklahoma Firefighters similarly directs Bernstein Liebhard to withdraw as counsel here – for

any reason at any stage of this litigation – the class will be severely prejudiced.  *See*, *e.g.*,

*Miller v. Dyadic Int'l, Inc.*, 2008 U.S. Dist. LEXIS 32271 (S.D. Fla. Apr. 18, 2008)

(revisiting lead plaintiff order after lead plaintiff and counsel withdrew).[9]

       Given Bernstein Liebhard's lack of candor in seeking to represent the FSBA and the

firm's withdrawal as counsel to another public pension fund at the lead plaintiff stage, the

Court should inquire as to whether Oklahoma Firefighters was fully apprised of these events

and is prepared to address the inevitable challenges to counsel's adequacy at the class

certification stage.  *See generally In re FARO Techs. Sec. Litig.*, 2006 U.S. Dist. LEXIS

23500 (M.D. Fla. Apr. 26, 2006) (Baker, Mag. J.) (deferring decision on lead counsel

---

[8]      The FSBA also asked Mr. Bernstein if "the firm [has] ever been the subject of a motion to disqualify as lead counsel." *See* Wilens Decl., Exh. G at 38. Mr. Bernstein again answered "[n]o." *Id.*

[9]      To reiterate, the primary concern with respect to Oklahoma Firefighters' selection of Bernstein Liebhard as lead counsel for the class here is ***not*** the underlying conduct that was investigated by the Manhattan D.A.'s office in 2008. Rather, the focus is Bernstein Liebhard's candor with its public pension fund clients, including FSBA, the State of Michigan, and now Oklahoma Firefighters, as well as the risk that these issues provide fodder for defense attacks at the class certification stage, where adequacy of counsel is a central issue. The failure of Oklahoma Firefighters to submit a declaration acknowledging its awareness of the issue only highlights the concern. *See Cavanaugh*, 306 F.3d at 370 (after determining which movant has the largest loss, court must "determine, based on information he has provided in his pleadings ***and declarations***, whether he satisfies the requirements of Rule 23(a), in particular those of typicality and adequacy.").

pending additional filings).[10]   Indeed, as Judge Kovachevich observed more than a decade ago, "[j]udges should have access to and explore the facts sufficiently to make an intelligent determination of the matter." *Fischler v. AmSouth Bancorporation*, 1997 U.S. Dist. LEXIS 2875, at *9 (M.D. Fla. Feb. 6, 1997); *see also In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 229 (D.D.C. 1999) (SEC, as *amicus curiae*, noted that the PSLRA "preserves the court's traditional discretion to evaluate counsel for the protection of the class").   And for situations such as this, the PSLRA contains a mechanism which allows a court to make such an informed judgment.   *See* 15 U.S.C. §78u-4(a)(3)(B)(iv) (allowing a plaintiff to take discovery relating to whether a member . . . of the class is the most adequate plaintiff" upon showing a "reasonable basis").   Because there is a reasonable basis to question Bernstein Liebhard's candor towards Oklahoma Firefighters as well as Oklahoma Firefighters' vetting process (given the publicly available information) and its ability to serve as a faithful fiduciary on behalf of the class, and because Oklahoma Firefighters and Bernstein Liebhard will undoubtedly be attacked on this basis at class certification, the Court should allow Alaska Electrical to "conduct expedited discovery as to whether [Oklahoma Firefighters] is the most adequate plaintiff." *Fischler*, 1997 U.S. Dist. LEXIS 2875, at *11.[11]

---

[10]     In order to protect the putative class against the repercussions of an adequacy challenge at the class certification stage, Oklahoma Firefighters should submit its plan for addressing a defense challenge to the Court for *in camera* review.

[11]     *See also Cavanaugh*, 306 F.3d at 730 (noting that the "district court may need to hold an evidentiary hearing" to "make a renewed determination of typicality and adequacy"); *Applestein v. Medivation, Inc.*, No. 10-0998-MHP, slip op. at 7 (N.D. Cal. Sept. 20, 2010) (allowing plaintiffs to "conduct discovery directed solely at whether [movant] is a suitable plaintiff to lead the class of investors" based on court's concerns) (Wilens Decl., Exh. I);

If, after limited expedited discovery is completed, Oklahoma Firefighters is able to make a *prima facie* showing of adequacy as to its selection of counsel and counsel's candor regarding the events described herein, the Court will then be in a position to determine whether Oklahoma Firefighters is the presumptively most adequate plaintiff in accordance with the PSLRA.[12]   If, however, "no satisfactory answer is forthcoming, the court may consider whether the plaintiff's decision to select that lawyer casts doubt on his ability to handle the responsibilities of lead plaintiff."  *Cavanaugh*, 306 F.3d at 733, n.12 (noting that court may ask movant "whether he would be willing to serve as lead, even if the court were

---

*Prissert v. Emcore Corp.*, No. 08-1190-MV-RLP, slip op. at 7 (D.N.M. Sept. 25, 2009) ("allow[ing] limited discovery" because competing movants "have shown a reasonable basis for a finding that [a movant's] standing, typicality adequacy or potentially unique defenses may render [the movant] incapable of adequately representing the class") (Wilens Decl., Exh. J); *In re Reserve Fund Sec. & Deriv. Litig.*, No. 1:09-md-02011-PGG, slip op. at 1-2 (S.D.N.Y. Aug. 5, 2009) (permitting limited discovery of movant with largest financial interest) (Wilens Decl., Exh. K); *Smajlaj*, 2006 U.S. Dist. LEXIS 97618, at *7 (permitting "supplemental briefing in order to gather more information about [movant's] standing, structure, transparency and authority to serve as Lead Plaintiff" and also permitting "limited discovery concerning [movant], including a deposition of its corporate representative"); *In re Cephalon Sec. Litig.*, 1996 U.S. Dist. LEXIS 10546, at *2 (E.D. Pa. July 18, 1996) (finding that "discovery on the issue of determining the most adequate plaintiff is appropriate" where competing movant "raised concerns challenging [the presumptive lead plaintiffs'] position").

[12]     In the event the Court determines that Alaska Electrical has not presented a "reasonable basis" to permit limited discovery concerning Oklahoma Firefighters' ability to serve as lead plaintiff, "the court, on its own initiative, [may] seek further information from the presumptive lead plaintiff."  *Cendant*, 264 F.3d at 270; *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1138 (C.D. Cal. 1999) ("the court may *sua sponte* raise and address certain of the concerns" raised by the parties); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 454 (D.N.J. 2000) (same).

to disapprove his choice of counsel and he were forced to seek the services of another attorney").[13]

If the Oklahoma Firefighters (and its counsel) cannot make the threshold showing of adequacy, the Court should "identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.* Alaska Electrical is the movant with the next largest losses that also satisfies Rule 23's requirements at this stage.

---

[13]     *Cavanaugh* makes clear that the district court has latitude in determining what information it will consider in assessing a prospective lead plaintiff's adequacy (including choice of counsel) and should, when necessary, make inquiry to determine whether the prospective plaintiff's decision concerning counsel casts doubt on his ability to handle the responsibilities of lead plaintiff. *Id.* at 733.  It cautions, however, against district courts merely presiding over "beauty contests" among firms to determine which firm is best or cheapest. *See id.* at 732.  Here, Alaska Electrical does not claim that it should be appointed because it selected better counsel or negotiated a better fee structure.  Rather, it raises legitimate and serious questions concerning whether, in the course of its due diligence, Oklahoma Firefighters learned, from Bernstein Liebhard or from publicly available news stories, of the same information that the FSBA and State Treasurer of Michigan ultimately learned about Bernstein Liebhard.  To be sure, Alaska Electrical does not ask the Court to conduct a beauty contest or to compare fee structures; rather, it seeks to take limited discovery (or encourages Court inquiry) into issues bearing directly on counsel's candor towards the potential representative of a large class of investors and to whether that potential representative is fully informed and willing and able to question and oversee counsel and whether (and how) it is prepared to protect the class in the face of inevitable attacks at the stage of the litigation when "adequacy" (including adequacy of counsel) becomes a central, dispositive adversarial issue. *See Cendant*, 264 F.3d at 265 (recognizing that because "one of the lead plaintiffs most important functions is to select and retain lead counsel," a court should ensure adequacy by "inquir[ing] whether the movant has demonstrated a willingness and ability to select competent counsel").

**B.** **Alaska Electrical Should Be Appointed As Lead Plaintiff**

**1.** **Alaska Electrical and its Counsel Have Experience in this District**

Alaska Electrical not only has a significantly large financial interest in the relief sought by the class but also satisfies the Rule 23 requirements at this stage.  15 U.S.C. §78u-4(a)(3)(B)(iii).  With over $1 billion in assets, Alaska Electrical provides pension services and benefits to thousands of retirees and beneficiaries.  Further, Alaska Electrical has served successfully as a PSLRA lead plaintiff, securing several favorable outcomes for shareholders, including in this District in *In re Catalina Mktg. Sec. Litig.*, No. 03-cv-1582 (M.D. Fla. July 9, 2007) (Whittemore, J.) (represented by attorneys in Robbins Geller's Florida office).  In fact, Alaska Electrical's service as a lead plaintiff has led to over $200 million in recoveries as well as significant pro-shareholder appellate decisions.  *See*, *e.g.*, *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009) (Alaska Electrical obtained a reversal of grant of summary judgment and denial of class certification).  Tellingly, Oklahoma Firefighters makes "no argument against [Alaska Electrical] other than pointing out its relatively low[er] financial stake in the litigation." *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008).[14]

---

[14]     On October 15, 2010, Robbins Geller, the firm selected by Alaska Electrical, filed the first complaint in this action – itself a relevant factor in the selection of lead counsel.  *See* 15 U.S.C. §78u-4(a)(b)(iii)(I)(aa); *Mayo v. Apropos Tech., Inc.*, 2002 WL 193393, at *5 (N.D. Ill. Feb. 7, 2002) (requiring any counsel seeking to participate as lead or liaison counsel to present evidence regarding their appropriateness to serve as such on the grounds that the firm representing the presumptive lead plaintiff had done no independent investigation or research into the case); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (appointing the firm that drafted the first-filed complaint as co-lead counsel).

Alaska Electrical's adequacy is further illustrated by its selection of counsel with demonstrated success in this District, including: *In re TECO Energy, Inc. Sec. Litig.*, No. 04-cv-1948 (M.D. Fla. Aug. 25, 2004) (Whittemore, J.); *Reina v. Tropical Sportswear*, No. 03-cv-1958 (M.D. Fla. Sept. 16, 2003) (Merryday, J.); *Primavera Investors v. Liquidmetal Techs., Inc.*, No. 04-cv-919 (M.D. Fla. Apr. 26, 2004) (Merryday, J.); *In re Ins. Mgmt. Solutions Group, Inc. Sec. Litig.*, No. 00-cv-2013 (M.D. Fla. Sept. 28, 2000) (Lazzara, J.); and *Ratcliff v. Coast Fin. Holdings, Inc.*, No. 07-cv-504 (M.D. Fla. Mar. 26, 2007) (Lazzara, J.).[15] ***Each of these cases resolved favorably for the plaintiff class***.[16]

---

[15]     Robbins Geller's Florida lawyers have also demonstrated marked success in class actions in state court in the Circuit Court for the 13th Judicial District in and for Hillsborough County. *See, e.g., Charter Township of Clinton Police & Fire Ret. Sys. v. OSI Res. Partners, Inc.*, Case No. 06-010348 (Fla. Cir. Ct. Mar. 13, 2008) ($38 million in increased consideration obtained for shareholders). Alaska Electrical has selected a law firm with an office located in Florida which provides a class with the ability to prosecute local actions with the highest level of experience and professionalism while minimizing the cost and expense to the Class. Moreover, while the Court typically appoints a law firm, rather than individual lawyers, to formally serve the role of Lead Counsel, it is, of course, individual lawyers who litigate cases. Each of the aforementioned successfully resolved Middle District of Florida securities class actions was handled by the same core group of individual lawyers residing in Robbins Geller's Florida office (by partners Paul Geller, David George and Jack Reise) as would litigate the instant case in the event the firm is appointed Lead Counsel.

[16]     In contrast, New York-based Bernstein Liebhard has not had much success in this District. *See, e.g., Plumbers & Pipefitters Local 51 Pension Fund v. Darden Rests., Inc.*, No. 08-cv-388 (M.D. Fla. Aug. 11, 2009) (Scriven, J.) (motion to dismiss granted, which provided zero recovery for action in which Bernstein Liebhard was lead counsel); *see also Piven v. Sykes Enters.,* No. 00-cv-212 (M.D. Fla. Sept. 14, 2000) (Lazarra, J.) (Bernstein Liebhard criticized by other movants for its efforts to mass-solicit clients; after one of the firm's clients withdrew from consideration, court ultimately denied Bernstein Liebhard's motion).

### 2.     Alaska Electrical's Counsel's Experience with For-Profit Education Cases

In addition, Alaska Electrical selected as counsel here a firm that is at the forefront of securities fraud class actions against for-profit education services providers.  The overall scandal came to light after investigations conducted by the U.S. Government Accountability Office ("GAO"), revealing that for-profit education services providers had, among other things, allegedly engaged in improper and deceptive recruiting and financial aid lending practices.  When the news began to leak into the market concerning the findings of the GAO on recruiting techniques used in the for-profit higher education industry, Robbins Geller immediately formed an internal task force of lawyers, forensic accountants, and investigators – based out of the firm's Florida office.  Robbins Geller communicated with clients who worked with the task force charged with spearheading efforts to recover clients' losses.  To date, Robbins Geller has been retained by clients to investigate, research, draft, and in addition to the instant case, file complaints against the following for-profit education service providers like Strayer:

- *Washington Post Co.*:  Robbins Geller was retained by the Plumbers Local #200 Pension Fund and filed a complaint in the District of Columbia on October 28, 2010 against Washington Post, a diversified education and media company that owns the Kaplan Inc. for-profit educational institution. Robbins Geller was further retained by Iron Workers No. 25 Pension Fund to file a lead plaintiff motion on its behalf.  That motion is unopposed.

- *DeVry, Inc.*:  Robbins Geller was retained by the Boca Raton Firefighters & Police Pension Fund and filed a complaint in the Northern District of Illinois on November 1, 2010 against DeVry, a global provider of educational services and the parent organization of various for-profit colleges and universities.  Lead plaintiff motions are due on January 3, 2011.

- *ITT Educational Services, Inc.*:  Robbins Geller was retained by the Operating Engineers Construction Industry & Misc. Pension Fund and filed a

13

complaint in the Southern District of New York on November 3, 2010 against ITT, a leading private college system focused on technology-oriented programs of study.  Lead plaintiff motions are due on January 3, 2011.

- ***Capella Education Co.*:**  Robbins Geller was retained by the Police Pension Fund of Peoria and filed a complaint in the District of Minnesota on November 5, 2010 against Capella Education, the owner of Capella University, a regionally accredited online university.  Lead plaintiff motions are due on January 4, 2011.

- ***American Public Education, Inc.*:**  Robbins Geller was retained by the City of Miami Fire Fighters' & Police Officers' Retirement Trust to file a lead plaintiff motion in an action pending in the Southern District of West Virginia against APEI, an online provider of post-secondary education to military and public service communities.  On November 10, 2010, the district court appointed the City of Miami Fire Fighters' & Police Officers' Retirement Trust as lead plaintiff and approved its selection of Robbins Geller to serve as lead counsel.

- ***Corinthian Colleges, Inc*:**  Robbins Geller was retained by the Wyoming Retirement System and Stichting Pensioenfonds Metaal en Techniek to file a lead plaintiff motion in an action pending in the Central District of California against Corinthian, a private, for-profit post-secondary education company. These clients are the presumptive lead plaintiffs in the action and expect to be appointed as lead plaintiffs by the district court.

In short, Robbins Geller's expertise and commitment to this series of for-profit education services cases, with overlapping legal and factual issues, will inure to the benefit of the proposed *Strayer* class here and further confirms the adequacy of Alaska Electrical.

### 3.     Oklahoma Firefighters' Counsel's Lack of Experience with For-Profit Education Cases

By contrast, while Robbins Geller has been meeting with experts, investigating claims, communicating with clients and drafting complaints, Bernstein Liebhard took a much different approach to the "for-profit" genre of cases.  Specifically, after Robbins Geller filed the first complaint in this case, Bernstein Liebhard issued a generic internet solicitation announcing that a class action had been filed (failing to advise that the complaint was filed

14

by Robbins Geller) and encouraging its investors to contact the firm. *See* Wilens Decl., Exh. L. This fishing expedition reeled in at least one client, whose name Bernstein Liebhard attached to a virtually identical copy of the complaint drafted by Robbins Geller (with a slight class period modification). When attorneys merely issue press releases announcing the filing of another client's complaint for the sole purpose of soliciting clients, the PSLRA's primary purpose, to replace lawyer-driven litigation with client-driven litigation is subverted. *Tsirekidze*, 2008 WL 942273, at \*4 (refusing to appoint movant represented by counsel who had made a "patent effort to solicit clients," as such behavior "runs directly contrary to the goals of the PSLRA-to reduce lawyer-driven litigation.").

*Importantly, this is not the first time Bernstein Liebhard has been criticized for participating in allegedly improper solicitations in this District.* In *Piven*, Bernstein Liebhard clients were challenged (and one of its clients ultimately withdrew from the litigation altogether) because Bernstein Liebhard issued a mass mailing in an effort to solicit potential clients and lead plaintiff movants. No. 00-cv-212. Although not a mass mailing via the U.S. mail here, an internet solicitation is simply this decade's vehicle for achieving the same result.

### 4.    Other Relevant Experience

Furthermore, when deciding to retain Robbins Geller in this action, Alaska Electrical was aware that lawyers with Robbins Geller have not only been leaders in for-profit education cases and had demonstrated success in this District. Rather, Robbins Geller attorneys have also achieved:

- the ***largest*** securities class action settlement in history – over $7.3 billion – in *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex. Oct. 22, 2001);

- the *largest* transactional class action settlement in history – $200 million recovery obtained for the former shareholders – in *In re Kinder Morgan Inc. Shareholders Litig.*, No. 06-C-801, (Kansas Dist. Ct. June 9, 2006);

- the *largest* options-backdating derivative settlement in history – more than $925 million recovery for shareholders, including a $30 million contribution by the former CEO – in *In re UnitedHealth Group Inc. PSLRA Litig.*, No. 06-CV-1691 (D. Minn. May 5, 2006); and

- one of the most recent – and the *largest* – jury trial verdicts in a securities class action in *Jaffe v. Household Int'l, Inc.*, No. 02-C-05893 (N.D. Ill. Aug. 19, 2002).

In addition, Robbins Geller attorneys are responsible for obtaining the largest securities fraud class action recoveries ever in the Fifth, Sixth, Eighth, Tenth, and Eleventh Circuits.[17]

Thus, not only is Alaska Electrical independently qualified to serve as lead plaintiff, but its selection of Robbins Geller to serve as lead counsel confirms its suitability to represent the class here. As such, the Court should appoint Alaska Electrical as lead plaintiff and approve its selection of counsel.

---

[17] *See In re Enron*, No. H-01-3624 ($7.3 billion recovery for the class is largest in U.S. history and in the 5th Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. C2-04-00575 (S.D. Ohio July 2, 2004) (Marbley, J.) ($600 million recovery for the class is the largest ever in the 6th Circuit); *In re UnitedHealth Group*, No. 0:06-cv-01691 ($925 million recovery for the class represents the largest recovery in the 8th Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451 (D. Colo. July 27, 2001) ($445 million recovery for the class is the largest recovery in the 10th Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500 (N.D. Ala. June 24, 2003) ($671 million recovery for the class is the largest securities settlement in the 11th Circuit).

### III.    CONCLUSION

"The manifest intent of the PSLRA is to determine the plaintiff most capable of pursuing the action and representing the interest of the class." *Plymouth County Ret. Sys. v. Carter's, Inc.*, 2009 U.S. Dist. LEXIS 20582, at *6 (N.D. Ga. Mar. 13, 2009). Here, the Court is precluded from adopting the rebuttable presumption that Oklahoma is the "most adequate plaintiff" because Oklahoma Firefighters failed to satisfy its burden of demonstrating adequacy. Consequently, Oklahoma Firefighters' motion should be denied. In the alternative, the Court should grant limited expedited discovery to assess whether Oklahoma Firefighters can make a threshold showing of adequacy with respect to its selection of counsel for the class. If Oklahoma Firefighters is incapable of such a showing, the Court should grant Alaska Electrical's motion in its entirety.

Dated:  January 3, 2011                    ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           PAUL J. GELLER
                                           Florida Bar No. 984795
                                           DAVID J. GEORGE
                                           Florida Bar No. 0898570
                                           DOUGLAS WILENS
                                           Florida Bar No. 0079987
                                           ROBERT J. ROBBINS
                                           Florida Bar No. 0572233
                                           SABRINA E. TIRABASSI
                                           Florida Bar No. 0025521


                                           _____
                                                s/ Douglas Wilens
                                              DOUGLAS WILENS

17

120 E. Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dgeorge@rgrdlaw.com
dwilens@rgrdlaw.com
rrobbins@rgrdlaw.com
stirabassi@rgrdlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

s/ Douglas Wilens
DOUGLAS WILENS

18