UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARGARET JAYNE KINNETT,

    Plaintiff,

v.                                      CASE NO.: 8:10-cv-2317-T-23MAP

STRAYER EDUCATION, INC.,
ROBERT S. SILBERMAN, MARK C.
BROWN, and KARL McDONNELL,

    Defendants.
_____/

**ORDER**

In this consolidated securities fraud class action, the lead plaintiff alleges (Doc. 40) that Strayer Education, Inc., violated both the Securities and Exchange Act's Section 10(b), 15 U.S.C. § 78j, and the Securities Exchange Commission's Rule 10b-5, 17 C.F.R. § 240.10b-5(b). Additionally, the lead plaintiff alleges (Doc. 40) that Strayer officers Robert Silberman, Mark Brown, and Karl McDonnell violated the Security Exchange Act's Section 20(a), 15 U.S.C. § 78t(a). A June 9, 2011, order (Doc. 53) refers the defendants' motion to dismiss (Doc. 44) to Magistrate Judge Mark A. Pizzo for a report and recommendation. Judge Pizzo recommends

(Doc. 70) dismissal. The lead plaintiff objects (Doc. 74) and the defendants respond (Doc. 75) in opposition.[1]

The amended complaint (Doc. 40) fails to adequately allege a materially false statement or actionable omission under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(1), and Rule 9(b), Federal Rules of Civil Procedure. The amended complaint (Doc. 40) fails to adequately allege scienter under the PSLRA, 15 U.S.C. § 78u-4(b)(2); Rule 9(b), Federal Rules of Civil Procedure; and *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008). As explained below, the amended complaint fails to adequately allege loss causation under the PSLRA, 15 U.S.C. § 78u-4(b)(4), and Rule 8(a), Federal Rules of Civil Procedure.

The objection argues that Strayer, a "for-profit" secondary educational institution receiving 95% of revenue from student tuition payments, deceived the market by stating that Strayer neither "pushed," "managed," nor "controlled" student enrollment numbers. The statements allegedly signaled to the market an internal practice of "passive recruitment," *i.e.*, "recruiting tactics that did not 'push' or 'force' students to enroll against the students' best interest." (Doc. 74, at 4)

---

[1] Local Rules 1.05(a) and 3.01(b) limit a response to twenty double-spaced pages of twelve point font. The lines on the defendants' twenty-page response (Doc. 75) are incrementally and deceptively less than double-spaced. The paper contains at least one lengthy footnote on fourteen of the twenty pages. As counsel is well aware, the prerequisite under Local Rule 3.01(d) to a too-lengthy response is a motion to exceed the page limit. The surreptitious circumvention of the local rules by counsel is noted with disapproval.

However, according to the lead plaintiff, enrollment growth occurred as a result of a high-pressure sales environment, including enrollment quotas unattainable without the use of illegal or improper tactics. Unaware of the alleged illegal or improper tactics, the market artificially inflated the price of Strayer common stock.

In the summer of 2010, the Government Accountability Office ("GAO") began investigating the recruiting, admission, and financial aid practices of for-profit educational institutions. An August 4, 2010, GAO report finds "many instances" of fraudulent recruiting and enrollment practices. (Doc. 40, ¶ 99) Importantly, Strayer was neither investigated by the GAO nor named in the report. Nonetheless, amid fallout from the GAO report, an August, 2010, congressional subpoena requested from Strayer (and twenty-nine other for-profit educational institutions) information concerning recruiting and enrollment tactics. Additionally, the Department of Education began a review of Strayer's administration of Title IV programs.

"Bur[ying] bad news late on Friday afternoon," Strayer announced on January 10, 2011, a 20% decline in new student enrollment for the fourth quarter of 2010. (Doc. 40, ¶ 201) Strayer shares closed at $153.24 per share. On Monday, January 10, 2011, the following exchange occurred during a 7:30 a.m. conference call before the "opening bell" with investors:

> AMY JUNKER, ANALYST, ROBERT BAIRD: I'm hoping you can just touch a little bit on any additional color on why you think starts have degraded so much since last quarter. Do you still believe that negative press is kind of the only plausible explanation as you talked about last quarter? Were you seeing any evidence that students have become perhaps more debt averse or any of the

> reasons that you're getting from the students themselves to indicate why this is happening?
>
> ROBERT SILBERMAN: Sure. I mean Karl [McDonnell] is here, and he can comment as well. I don't know of any specific set of concerns with regard to pricing or debt capacity. Our new student enrollment was fairly consistent across all of our geographic regions in terms of the impact. So I would – there is nothing geographic that I would look at.
>
> I do think that negative publicity and just a general sense of – you have to bear in mind the difficulty that students go through in terms of deciding to go back to school, there is always a lot of reasons not to do it, and the negative publicity in the last four or five months certainly has had an impact. *We have also been I would admit somewhat distracted internally here over the last two or three months just in dealing with some of the ramifications of not just the publicity but the actual governmental activity.*

(Doc. 74, at 22; Doc. 40, ¶ 199) (emphasis in original) On Monday, January 10, 2011, Strayer shares closed at $118.60 per share, a $34.64 per share plummet.

The lead plaintiff contends that the above emphasized "revelation" corrected the market's previous misconception of "passive recruiting" by revealing that Strayer previously engaged in illegal or improper recruiting tactics ("non-passive" recruiting) that artificially inflated the price of Strayer common stock. The lead plaintiff necessarily contends that "the revelation" caused the Monday decrease in the price of Strayer common stock. Disagreeing, Magistrate Judge Pizzo concludes:

> These statements do not lead to the conclusion [the lead plaintiff] asks the Court to reach, namely that Defendant's admission that Strayer's enrollments were effected by "governmental activity" revealed that Strayer's enrollment practices had not previously conformed with the government standards, as codified in the Higher Education Act or Strayer's internal code of ethics, or that Defendants modified Strayer's enrollment practices because of government scrutiny. . . . [N]othing in the statements corrects any prior disclosures by or reveals any omissions on the part of Defendants which negatively affected the price of Strayer common stock.

(Doc. 70, at 33) After *de novo* review, I agree with Magistrate Judge Pizzo.

- 4 -

The lead plaintiff's objection (Doc. 74) is **OVERRULED**. The report and recommendation (Doc. 70) is **ADOPTED**. The amended complaint (Doc. 40) is **DISMISSED**, and this action is **DISMISSED WITH PREJUDICE**. The clerk is directed to (1) terminate any pending motion and (2) close the case.

ORDERED in Tampa, Florida, on March 20, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE